UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTWAIN BLACK,

    Plaintiff,

v.                                  05-CV-3272

DR. JOSEPH MAURER and
KENDRA FABISH,

    Defendants.

### Order Granting Summary Judgment

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs during his incarceration in Sangamon County Jail in 2003-2004. The case is before the court on Defendants' motion for summary judgment, which is granted for the reasons below.

*Summary Judgment Standard*

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

*Undisputed Facts*

Plaintiff asserts that he "sent affidavits as well as depositions and medical records . . . to the Defendants and the Court to be filed, but was sent back to the Plaintiff to be settled between he and the Defendants." (d/e 38 p.2). Plaintiff asserts that it is unfair to consider Defendants' evidence when he tried to file evidence but it was returned unfiled. He has since filed two letters (without certificates of service) informing the court that he is on furlough to another jail regarding his criminal case, and asking for more time to respond to the summary judgment (d/e's 41, 42).

There is nothing in the record about a refused attempt by Plaintiff to file affidavits, depositions and medical records to support of his claim.  Plaintiff may have been referring to discovery conducted between the parties which is not to be filed with clerk under Local Rule 26.3, except in support of motions or responses thereto.  Plaintiff may be referring to his "Statement of Case" (d/e 9), which was filed and which contains 33 page of exhibits, including medical records.  The court has considered document 9 and its exhibits in regards to summary judgment.  Plaintiff's affidavit, medical records and deposition is already in the record.  Plaintiff does not explain what further evidence he has.  As to Plaintiff's request for an extension, Plaintiff has had ample time to respond to the summary judgment motion, which was filed last January.  Additionally, Plaintiff does not explain how an extension would help his case–the court already has the relevant medical records and Plaintiff's side of the story.  Accordingly, the court finds the following facts undisputed.[1]

1. The precise date of Plaintiff's incarceration in the Sangamon County Jail is not established, but the medical records from the jail show that he was seen by Dr. Maurer on March 26, 2003.

2.  A history was taken and Plaintiff was examined on March 26, 2003. The Plaintiff had suffered a gunshot wound to his left leg, and he received treatment for this injury. The records do not reflect any complaints by Plaintiff about his feet. (Sangamon County Jail Records, Exhibit A, pages 1 and 2.)

3. On April 1, 2003, there was a medical screening of the Plaintiff in the jail. The records do not reflect any complaints by Plaintiff about his feet. The records show that Plaintiff was 5' 5" tall and weighed 253.5 pounds. (Sangamon County Jail Records, Exhibit A, page 3)

4.  On April 13, 2003, Plaintiff filled out a form that he would like to see a doctor. The staff response was to place him on the doctor's sick call for April 16, 2003. (Sangamon County Jail Records, Exhibit A, page 5).

5. On April 16, 2003 the Plaintiff was seen by Dr. Maurer.  The records reflect Plaintiff voiced several different complaints, among them was a complaint that his feet swelled and that his feet were killing him. He was prescribed Ibuprofen 400 to be taken as needed. (Sangamon County Jail Records, Exhibit A, pages 6 and 7; Affidavit of Dr. Maurer, Exhibit C).

6. On June 11, 2003, the Plaintiff filled out a form that he needed pain pills as his feet were swollen again.  In response, Plaintiff received Ibuprofen.

7. On June 16, 2003, the Plaintiff filled out a form stating that he had feet problems and would like permission to have on his shoes with support brought in. He was placed on Dr.

---

[1]Many of the facts are set forth verbatim from the Defendants' proposed facts, where relevant, undisputed and supported by their cites.

Maurer's list for the following Wednesday. (Sangamon County Jail Records, Exhibit A, page 10)

       8. On June 18, 2003, the Plaintiff saw Dr. Maurer. Plaintiff's weight was 255 pounds. The doctor diagnosed Plaintiff with pes planus or flat feet. Dr. Maurer advised Plaintiff to lose weight and prescribed the medications Metatarralyex and Tylenol 500 mg. for pain. (Sangamon County Jail Records, Exhibit A, page 11; Affidavit of Dr. Maurer, Exhibit C).

       9. On October 8, 2003, the Plaintiff saw Dr. Maurer regarding problems with his feet and ankles. Plaintiff's weight was now up to 265 pounds. He had tennis shoes at this time. A new pain medication, Naproxen, was prescribed. (Sangamon County Jail Records, Exhibit A, page 12)

       10. On October 15, 2003, the Plaintiff returned to see Dr. Maurer reporting that his feet were okay, but continued to swell. (Sangamon County Jail Records, Exhibit A, page 12).

       11. On February 4, 2004, the Plaintiff complained again that his feet hurt. He was continued upon Naproxen. (Sangamon County Jail Records, Exhibit A, page 11).

       12. On February 23, 2004, the Plaintiff stated his feet hurt and he wanted an orthopedic referral. Plaintiff's request was refused because Dr. Maurer believed that there was nothing an orthopedist could do for the Plaintiff and would refuse to see the Plaintiff for flat feet. Instead, Plaintiff was continued upon the Naproxen regimen and issued a prescription for high-topped tennis shoes. (Sangamon County Jail Records, Exhibit A, page 11; Affidavit of Dr. Maurer, Exhibit C).

       13. On May 19, 2004, the Plaintiff saw Dr. Maurer and complained of foot pain. There was no change in his physical exam and he was continued upon the Naproxen medication. (Sangamon County Jail Records, Exhibit A, page 11)

       14. On June 8, 2006, the Plaintiff received a medical screening and he did not check any problems of swelling or pain of his feet or ankles. (Sangamon County Jail Records, Exhibit A, page 14; Affidavit of Dr. Maurer, Exhibit C). His weight was recorded at 270 on a 5' 5" frame, with a blood pressure of 144/88.

       15. Plaintiff was transferred to the Mason County Jail on or about July 20, 2004. (Sangamon County Jail Records, Exhibit A, page 15). Mason Jail's medical intake form reflects no complaints by Plaintiff. (Mason County Jail Records, Exhibit B, page 26). However, the form does record Plaintiff's blood pressure as 160/112 and his weight at 266. Additionally, a form titled "Medical Summary of Federal Prisoner/Alien in Transport," dated July 20 and 21, 2004, effectively states that Plaintiff's length of travel may be restricted by his "uncontrolled hypertension, extremely high blood pressure." (d/e 9, Ex. B-10).

       16. On July 23, 2004, the Plaintiff was seen at a Mason County Jail clinic with complaints

of pain and swelling on the dorsal aspect of the right foot for the past 2-3 days. Naproxen was discontinued and Lodine 400 was prescribed. (Mason County Jail Records, Exhibit B, pages 1 and 2). The medical records from that visit indicate Plaintiff has a family history of diabetes and hypertension in his family (his father died at age 55 and had diabetes and hypertension, and his maternal grandfather died of a myocardial infarction at an unknown age). *Id.* Screening tests were done which showed that Plaintiff met the diagnostic criteria for metabolic syndrome and new onset diabetes Type II and that he had hyperlipidemia. (Mason County 8/23/04 medical note). Plaintiff was prescribed medications for his diabetes (Metformin) and hyperlipidemia (Zocor and daily aspirin). He was also sent for a diabetic eye examination, diabetic education, and efforts were made to regularly monitor Plaintiff's blood glucose and ensure daily exercise opportunities. (Mason County Jail Records, Exhibit B, pages 3 and 4).

17. On July 26, 2004, an x-ray was performed of the Plaintiff's right foot. There was no acute fracture and dislocation. There was a pes-planus/flatfoot deformity, which confirmed Dr. Maurer's diagnosis. (Mason County Jail Records, Exhibit B, page 6; Dr. Maurer's Aff. ¶ p. 2)

18. On September 3, 2004, the Plaintiff was seen again at the Mason County Jail clinic. He reported he continued to take Lodine, and his history of right foot pain had resolved without recurrence. The Plaintiff had lost 5.5 pounds and the foot pain went away. He ultimately lost about 15 pounds in the Mason County Jail. He used the Lodine about ten times and still uses it if he has feet problems. (Mason County Jail Records, Exhibit B, page 5; Deposition of Antwain Black, Exhibit D, page 40).

19. The Plaintiff was returned to the Sangamon County Jail about September 20, 2004 and stayed in custody there until on or about April, 2005. He had no further complaints about his feet after he returned. (Sangamon County Jail Records, Exhibit A, page 16-26; Dr. Maurer Affidavit, Exhibit C).

20. In October of 2004, while in Sangamon County Jail, Plaintiff became dizzy while exercising and passed out. He was monitored in the medical unit for further problems, but none arose. (d/e 9 ¶ 6). Plaintiff does not have any complaints about his medical treatment with regard to this incident. *Id.*.

21. In January of 2005, Plaintiff awoke with lower back pain and could hardly move. He received pain medication in the morning and reported feeling much better in a follow-up that afternoon. (d/e 9, Ex. C-2). He does not have any complaints about his medical treatment with regard to this incident.

22. At the time of Plaintiff's deposition, Plaintiff's weight was down to 212 pounds and he had no feet problems. (Deposition of Antwain Black, Exhibit D, pages 46 and 47)

22. Kendra Fabish is not mentioned in the Sangamon County Jail Records as having personally treated the Plaintiff with the possible exception of being involved with obtaining high-topped tennis shoes for the Plaintiff. The Plaintiff had no complaint about her obtaining the

shoes.  (Sangamon County Jail Records, Exhibit A, page 11; Deposition of Antwain Black, Exhibit D, page 13 -18.).

    23.  The Plaintiff was diagnosed with Type 2 Diabetes in the Mason County Jail. He showed no signs of any feet problems as a result of diabetes. Diabetes neuropathy would cause a numbness of the feet, not pain or swelling of the feet, and no such numbness was reported by Mr. Black in the medical records. (Affidavit of Dr. Joseph Maurer, Exhibit C).

*Analysis*

    Deliberate indifference to a serious injury or medical need violates a prisoner's rights under the Eighth Amendment to be free from cruel and unusual punishment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), *citing Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976).  The injury or need must be objectively serious, *and* the official must personally know of the risk and consciously disregard it.  *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88. 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d at 593 (2001).  An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman*, 241 F.3d at 845, *quoting Zentmyer v. Kendall County* 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters* 111 F.3d 1364, 1373 (7th Cir. 1997)).  The subjective component (deliberate indifference) does not encompass negligence or even gross negligence. *Id.*, *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  Malpractice is not deliberate indifference.  The prisoner must "show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety."  *Wynn*, 251 F.3d at 593, *citing Farmer v. Brennan*, 511 U.S. at 837; *Zentmyer*, 220 F.3d at 811.

    Plaintiff's chief complaints appear to be that Defendants failed to take his vitals; failed to diagnose his diabetes, hypertension, and heart attack risk; wrongly prescribed him Naproxen (which he asserts was dangerously contradindicated); refused his request to see a foot specialist; and did not effectively treat his foot problems.

    As to Plaintiff's feet, he has no evidence to dispute that Dr. Maurer correctly diagnosed the problem as flat feet, exacerbated by Plaintiff's weight.  Dr. Maurer prescribed pain medicine and told Plaintiff to lose weight.  Plaintiff has no evidence that referral to a specialist would have produced any other diagnosis or treatment.  In fact, Plaintiff lost weight and his foot problems subsided.  Similarly, Plaintiff's assertion that Naproxen was contraindicated is speculation unsupported by evidence.  Dr. Maurer avers that Naproxen is an over-the-counter drug sold commonly as Aleve, and that, while "persons who have had a heart attack may have a higher risk in taking this medication, [Plaintiff] had no history that would indicate that Naproxen was contraindicated for his use." (Dr. Maurer Aff. p.3).  Dr. Maurer avers that Naproxen carries no greater risk than Lodine, a "chemically similar" pain medicine.  Dr. Maurer further avers that there are no indications that Plaintiff suffered any adverse effects from taking Naproxen. (Dr.

Maurer Aff. p. 3). Plaintiff has no evidence to dispute these averments.

However, an inference arguably does arise that Plaintiff had undiagnosed Type II diabetes, hypertension and hyperlipidemia before his transfer to Mason County Jail, where he received the screening tests necessary to diagnose those conditions. An argument can be made that those screening tests, along with regular taking of vitals, should have been done at Sangamon County Jail, in light of Plaintiff's obesity, hypertension and family history of diabetes, hypertension and heart attack. "Should have," however, is not grounds for a Constitutional claim. "A negligent or inadvertent failure to provide adequate medical care is insufficient to state a section 1983 claim . . . 'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. . . .'" *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002), *quoting* Estelle, 429 U.S. at 106.

Plaintiff has no evidence that Defendants' treatment decisions resulted from "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of Cole v. Pardue*, 94 F.3d 254, 261-62 (7th Cir. 1996). Plaintiff does not dispute Dr. Maurer's averment that Plaintiff was borderline for his diabetes diagnosis and that his foot problem was not attributable to the diabetes. Each time Plaintiff presented for health care at Sangamon County Jail, his complaint was about his feet, not about any overt symptoms that might have been attributable to diabetes or heart problems. Plaintiff's complaints about his feet were taken seriously and responded to with pain medicine and a prescription to lose weight–both correct responses on this record. That Dr. Maurer did not order screening tests to diagnose other possible medical problems does not support an inference of deliberate indifference on the facts of this case.[2] Because this conclusion ends the case, the court need not address Defendants' other arguments for summary judgment, though the court notes that lack of personal responsibility is an alternative grounds for summary judgment to Defendant Fabish.

IT IS THEREFORE ORDERED:

1) The defendant's motion for summary judgment is granted [d/e 34]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff. All pending motions are denied as moot. The dates for final pretrial conference and trial are vacated. This case is terminated, parties to bear their own costs;

2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A

---

[2]Additionally, there is no evidence that Plaintiff suffered damages from the delay in diagnosis. There is no evidence he suffered any overt symptoms before the diagnosis; nor is there evidence of the kind of future harm that might be actionable under the theory of *Helling v. Mckinney*, 509 U.S. 25 (1993).

motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

Entered this 13th Day of <u>August</u>, 2007.

                **s\Harold A. Baker**
                _____
                HAROLD A. BAKER
              UNITED STATES DISTRICT JUDGE